28 U.S.C § 1332
**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION**

| | |
|---|---|
| **SHIRLEY ASHLEY, Individually and as Administrator for the Estate of CHARLES A. ASHLEY,** | **DOCUMENT E-FILED** |
| | **JURY TRIAL DEMANDED** |
| **Plaintiffs,** | **CIVIL ACTION NO.: _____** |
| **v.** | |
| **A.W. CHESTERTON COMPANY, a Massachusetts Corporation;** | |
| **BAYER CROPSCIENCE, INC. f/k/a AVENTIS CROPSCIENCE USA, INC., f/k/a AMCHEM PRODUCTS, INC., a Delaware Corporation;** | |
| **CBS CORPORATION, f/k/a VIACOM, INC., Successor by Merger to CBS CORPORATION, f/k/a WESTINGHOUSE ELECTRIC CORPORATION, a Delaware Corporation;** | |
| **CERTAINTEED CORPORATION, a Delaware Corporation;** | |
| **CRANE CO., a Delaware Corporation;** | |
| **EATON CORPORATION, a Delaware Corporation;** | |
| **EATON HYDRAULICS LLC, Successor By Merger to EATON HYDRAULICS, INC., f/k/a VICKERS INCORPORATED, a Delaware Corporation;** | |
| **FOSTER WHEELER ENERGY CORPORATION, A Delaware Corporation;** | |

**GENERAL ELECTRIC COMPANY, an Ohio
Corporation;**

**GEORGIA PACIFIC, LLC, a Georgia
Corporation;**

**THE GOODYEAR TIRE & RUBBER
COMPANY, an Ohio Corporation;**

**GOULDS PUMPS, INCORPORATED,
a Delaware Corporation;**

**GRINNELL LLC, a Delaware
Corporation;**

**HONEYWELL INTERNATIONAL INC., a
Delaware Corporation;**

**IMO INDUSTRIES INC. f/k/a IMO DELAVAL,
INC. f/k/a TRANSAMERICA DELAVAL, INC.,
f/k/a DELAVAL TURBINE, INC., a Delaware
Corporation;**

**INGERSOLL-RAND COMPANY, a
Delaware Corporation;**

**ITT CORPORATION d/b/a BELL & GOSSETT
PUMPS AND d/b/a KENNEDY VALVES
d/b/a HAMMEL DAHL VALVES, a Delaware
Corporation;**

**METROPOLITAN LIFE INSURANCE COMPANY,
A New York Corporation;**

**UNION CARBIDE CORPORATION, a
Delaware Corporation;**

**UNIROYAL HOLDING, INC., f/k/a UNIROYAL,
INC., a New Jersey Corporation;**

**WARREN PUMPS, INC., A Massachusetts
Corporation;**

**Defendants.**

## COMPLAINT

Plaintiffs, SHIRLEY ASHLEY, Individually and as Administrator for the Estate of CHARLES A. ASHLEY, for their Complaint against the Defendants, allege as follows:

## SUMMARY OF ACTION

1.     This is a civil action for monetary damages against the Defendants under the diversity jurisdiction of this Court for both maritime claims of strict liability and negligence and, state tort law claims of strict liability and negligence. Plaintiffs' maritime claims arise from asbestos exposure on ships in navigable waters at, *inter alia,* Naval Station Norfolk Virginia and Norfolk Naval Shipyard. Plaintiff's state tort law claims arise from asbestos exposure during Decedent CHARLES A. ASHLEY's work installing and repairing telephone lines and equipment. Exposures to asbestos during both employments caused or substantially contributed to the cause of Decedent CHARLES A. ASHLEY's lung cancer, which caused his death.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, based on the complete diversity of the parties and the amount in controversy, which exceeds $75,000.00, exclusive of interest and costs.

3.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1333(1) and 46 U.S.C. § 30101 and, as such, the general maritime law of the United States governs this case.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b)(2) & (3) because Defendants are subject to personal jurisdiction in this District and because a substantial part of the events or omissions giving rise to Plaintiffs' claims alleged herein occurred in this District.

3

## THE PARTIES

5.     Decedent, CHARLES A. ASHLEY, was a citizen and resident of the State of Georgia and resided in Scotland, Telfair County, Georgia.

6.     Plaintiff, SHIRLEY ASHLEY, is a citizen and resident of the State of Georgia and resides in Scotland, Telfair County, Georgia.

7.     Defendant, A.W CHESTERTON COMPANY, is a Massachusetts corporation with its principal place of business in Massachusetts.

8.     Defendant, BAYER CROPSCIENCE, INC. f/k/a AVENTIS CROPSCIENCE USA, INC., f/k/a AMCHEM PRODUCTS, INC., is a Delaware corporation with its principal place of business in North Carolina.

9.     Equipment Defendant, CBS CORPORATION, f/k/a VIACOM, INC., Successor by Merger to CBS CORPORATION, f/k/A WESTINGHOUSE ELECTRIC CORPORATION, is a Delaware corporation, with its principal place of business in New York.

10.     Defendant, CERTAINTEED CORPORATION, is a Maryland corporation with its principal place of business in Pennsylvania.

11.     Equipment Defendant, CRANE, CO., is a Delaware corporation, with its principal place of business in Connecticut.

12.     Equipment Defendant, EATON CORPORATION, is an Ohio corporation with its principal place of business in Ohio.

13.     Equipment Defendant, EATON HYDRAULICS LLC, Successor By Merger to EATON HYDRAULICS, INC., f/k/a VICKERS INCORPORATED, a Delaware corporation with its principle place of business in Ohio.

4

14.     Equipment Defendant, FOSTER WHEELER ENERGY CORPORATION, is a Delaware corporation with its principle place of business in New Jersey.

15.     Equipment Defendant, GENERAL ELECTRIC COMPANY, is a New York corporation with its principle place of business in Massachusetts.

16.     Defendant, GEORGIA-PACIFIC LLC, is a North Carolina corporation with its principle place of business in Georgia.

17.     Defendant, THE GOODYEAR TIRE & RUBBER COMPANY, is an Ohio corporation with its principle place of business in Ohio.

18.     Equipment Defendant, GOULDS PUMPS INCORPORATED, is a Delaware corporation with its principle place of business in New York.

19.     Equipment Defendant GRINNELL LLC, is a Delaware corporation with its principle place of business in Florida.

20.     Defendant, HONEYWELL INTERNATIONAL INC., a Delaware corporation with its principle of business in New Jersey.

21.     Equipment Defendant, IMO INDUSTRIES INC., f/k/a IMO DELAVAL, INC., f/k/a TRANSAMERICA DELAVAL, INC., f/k/a DELAVAL TURBINE, INC., a Delaware corporation with its principle place of business in New Jersey.

22.     Equipment Defendant, INGERGOLL-RAND COMPANY, is a New Jersey corporation with its principle place of business in North Carolina.

23.     Equipment Defendant, ITT CORPORATION d/b/a BELL & GOSSETT PUMPS and d/b/a KENNEDY VALVES d/b/a HAMMEL DAHL VALVES, a Delaware corporation with its principle place of business in New York.

24.     Defendant, METROPOLITAN LIFE INSURANCE COMPANY, is a New York corporation with its principle place of business in New York.

25.     Defendant, UNION CARBIDE CORPORATION, is a Delaware corporation with its principle place of business in Tennessee.

26.     Defendant, UNIROYAL HOLDING, INC., f/k/a UNIROYAL INC., is a New Jersey corporation with its principle place of business in Connecticut.

27.     Equipment Defendant, WARREN PUMPS, INC., is a Massachusetts corporation with it principle place of business in Massachusetts.


## FACTUAL BACKGROUND


28.     Plaintiff, CHARLES A. ASHLEY, served in the United States Navy as an aviation machinist mate from October 30, 1957, to November 22, 1961, and served onboard ships homeported, repaired, and/or overhauled at Naval Station Norfolk Virginia and Norfolk Naval Shipyard, Portsmouth, Virginia. Plaintiff was also stationed at Naval Air Station Bermuda - Cooper's Island, SGS (Bermuda) from July 07, 1958, to July 01, 1960, and Naval Air Engineering Station Lakehurst - Lakehurst, New Jersey from August 01, 1960, to November 01, 1961. As a result of Plaintiff's Naval service as set forth above, CHARLES A. ASHLEY was exposed to uncontrolled asbestos dust, fibers, and/or particles from the maritime Defendants' asbestos-containing products. Plaintiff also worked as a telephone equipment installer and repairman in Southeast Georgia where he was exposed to uncontrolled asbestos dust, fibers, and/or particles from the non-maritime Defendants' asbestos-containing products.

29.    On or about November 11, 2015, CHARLES A. ASHLEY was diagnosed with lung cancer, which was caused in whole or substantial part by his exposure to asbestos dust, fibers and/or particles. On August 30, 2016, CHARLES A. ASHLEY died as a result of his lung cancer.

30.    Defendants are corporations, companies or other business entities which, during all times material hereto, and for a long time prior thereto, have been, and/or are now engaged, directly or indirectly, in the manufacturing, producing, selling, merchandising, supplying, distributing, and/or otherwise placing in the stream of commerce, asbestos-containing products, including, but not limited to those uniquely and specifically designed for maritime use and marketed for installation aboard ships.

31.    At all material times, Defendants acted through their agents, servants or employees who were acting within the scope of their employment on the business of the Defendants.

32.    As used hereafter, the term "asbestos-containing product" will be used to identify collectively: (i) raw asbestos fiber, (ii) end products directly incorporating asbestos fiber, and (iii) end products manufactured, assembled or supplied by a defendant who has specified and/or required raw asbestos and/or products incorporating asbestos manufactured or supplied by others, to be used, whether internally or externally, in conjunction with the end product for the routine maintenance, repair, and/or proper and intended use and operation of the end product.

33.    As used hereafter, the term "asbestos-containing packing" shall include asbestos-containing sheet packing, gaskets, braided packing, extruded packing, and all other such sealing products designed for use in sealing pipe flanges, valves, pumps, turbines, generators, bulkheads,

and for other such applications.

34.     Decedent, CHARLES A. ASHLEY, was exposed to asbestos-containing products that were manufactured, specified, and/or distributed by Defendants.  These asbestos-containing products were defective and inherently dangerous in the manner in which they were marketed for their failure to contain or include adequate warnings regarding potential asbestos health hazards associated with the use, removal or maintenance of, or the exposure to the products.  The defective and inherently dangerous condition of these asbestos-containing products, coupled with the disabling and/or fatal diseases generated by the inhalation of asbestos dust, rendered such asbestos-containing products unreasonably and inherently dangerous and thereby abrogated any need for privity of contract between Plaintiffs and these Defendants as a prerequisite to liability.

35.     Defendants' failure to warn renders them liable in negligence (as set forth in Count I), for strict liability in tort (as set forth in Count II), for spousal loss of society and consortium (as set forth in Count III) and for Wrongful Death under Georgia Law (as set forth in Count IV).  Plaintiffs expressly disclaim any claim arising under the Death on the High Seas Act.

36.     At all times material hereto,  the Equipment Defendants, manufactured, produced, distributed, sold or supplied, either directly or indirectly, to Plaintiff or Plaintiff's employer, asbestos-containing products, materials or equipment, materials, equipment and components. The Equipment Defendants also incorporated, specified, required or reasonably foresaw that its equipment would incorporate asbestos-containing products, materials or equipment, including but not limited to asbestos-containing packing, on their interior and exterior and knew, or reasonably should have known, that during the relevant period their end

products would not function as advertised or designed without such asbestos-containing products, materials or equipment,

material or components.

37. (a) Throughout Decedent's service in the United States Navy, he worked aboard vessels, on the navigable waters of the United States, including without limitation the territorial waters of the State of Georgia, performing the traditional maritime activity of ship repair. During the performance of traditional maritime activities while serving in the United States Navy, Decedent was continuously and daily required to install, remove, repair, alter, fabricate, work with, use, handle or otherwise come into contact with or to be exposed to asbestos-containing products, materials or equipment, material or equipment that were manufactured, sold, supplied, distributed or otherwise placed in the stream of commerce by the Defendants, resulting in inhalation of asbestos dust, fibers or particles generated from the intended, ordinary and foreseeable use of Defendants' asbestos-containing products, materials or equipment, materials or equipment.   Decedent's clothes, his person, or his belongings were covered with and contaminated with asbestos dust, fibers or particles generated from the intended, ordinary and foreseeable use of Defendants' asbestos-containing products, materials or equipment. Decedent's exposure to and inhalation of asbestos dust, fibers or particles proximately resulted in his contracting lung cancer, which lead to his death.

37. (b) Throughout  Decedent's employment in the installation and repair of telephone lines and equipment, he was continuously and daily required to install, remove, repair, alter, fabricate, work with, use, handle or otherwise come into contact with or to be exposed to

asbestos-containing products, materials or equipment, materials or equipment that were manufactured, sold, supplied, distributed or otherwise placed in the stream of commerce by the Defendants, resulting in inhalation of asbestos dust, fibers or particles generated from the intended, ordinary and

foreseeable use of Defendants' asbestos-containing products, materials or equipment, material or equipment.   Decedent's clothes, his person, or his belongings were covered with and contaminated with asbestos dust, fibers or particles generated from the intended, ordinary and foreseeable use of Defendants' asbestos-containing products, materials or equipment, material or equipment. Decedent's exposure to and inhalation of asbestos dust, fibers or particles proximately resulted in his contracting lung cancer, which lead to his death.

## COUNT I - NEGLIGENCE

38.    Plaintiffs hereby incorporate by reference Paragraphs one (1) through thirty-seven (37), inclusive, as if the same were hereto set forth at length.

39.    At all times material hereto, Decedent, CHARLES A. ASHLEY was not aware of the nature and extent of the danger to his respiratory system, heart, other bodily parts, and general health that would result from his contact with, exposure to and inhalation of the asbestos dust, fibers, or particles resulting from the intended, ordinary and foreseeable use of Defendants' asbestos-containing products, materials or equipment. Each of the Defendants was negligent in the following respects:

(a).    Defendants knew, had reason to know, should have known or could have reasonably determined that the normal, foreseeable use of their asbestos-containing products, materials or equipment posed an unreasonable danger without a warning for one or more of the

following reasons:

(1).     Defendants knew, had reason to know, or should have known of historic state of the art literature and other information placing them on notice of the hazards of asbestos and products, material or equipment containing asbestos;

(2).     Equipment Defendants designed and intended their end products to incorporate asbestos or asbestos-containing component parts;

(3).     Equipment Defendants knew, had reason to know, or should have known, that their end products required asbestos or asbestos component parts to function properly and as designed for their normal, foreseeable uses during the relevant time period;

(4).     Equipment Defendants knew, expected, and intended that asbestos-containing component parts and substantially identical replacement asbestos-containing components would be used throughout the useful life of their end products;

(5).     Equipment Defendants knew, had reason to know or should have known that these asbestos-containing component parts were wear items that would have to be replaced many times during the useful life of their end products;

(6).     Equipment Defendants affirmatively specified that asbestos components and replacement parts be used with their end products;

(7).     Equipment Defendants knew, had reason to know or should have known that their customers would use asbestos-containing replacement parts with Equipment Defendants' end products;

(8).    Equipment Defendants knew, had reason to know, or should have known, that the replacement asbestos-containing component parts would be substantially identical to the original asbestos-containing component parts supplied with their end products;

(9).    Equipment Defendants knew, had reason to know, or should have known that replacement asbestos-containing component parts would give rise to hazards

identical to those posed by the original asbestos-containing component parts during the normal, foreseeable use of Equipment Defendants' end products;

(10).    Equipment Defendants profited from selling their asbestos-containing end products in that, by designing and manufacturing a durable end product that was able to operate for many years or decades because of the ability to routinely replace internal wear items such as asbestos-containing gaskets and packing, Equipment Defendants were able to charge more money and receive a greater profit than if the end product lasted only until the original asbestos-containing component parts wore out;

(11).    Equipment Defendants knew, had reason to know, or should have known that during the relevant period of time, their end products would not function properly as advertised and designed without the use of asbestos-containing component parts, including asbestos-containing packing;

(12).    All Defendants were able to, and did, obtain liability insurance against the foreseeable asbestos health hazards inherent in the normal foreseeable use of their products, materials or equipment.

(b).        Because of this knowledge, all Defendants knew, had reason to know, or

should have known that the Plaintiff would inhale asbestos dust, fibers or particles during or as a

consequence of the intended, ordinary and foreseeable use of their asbestos-containing products,

materials or equipment. Despite this knowledge, all Defendants, individually, jointly, and

severally were negligent pursuant to either or both maritime negligence law or state tort law in

one or more of the following respects:

(1).     All Defendants mined, manufactured, sold, distributed, or

otherwise

placed in the stream of commerce asbestos-containing products, materials or equipment, which

Defendants knew or in the exercise of ordinary care should have known, or had reason to know,

were imminently and inherently dangerous, defective, and otherwise highly harmful to Decedent,

CHARLES A. ASHLEY and others exposed to asbestos dust, fibers or particles resulting from

the intended, ordinary and foreseeable use of their asbestos-containing products, materials or

equipment;

(2).     All Defendants failed to take reasonable precautions or to exercise

reasonable care to adequately or sufficiently warn Decedent, CHARLES A. ASHLEY, of the

dangers and harm to which he was exposed as a consequence of the inhalation of asbestos dust,

fibers or particles resulting from the intended, ordinary and foreseeable use of their asbestos-

containing products, materials or equipment;

(3).     All Defendants failed and omitted to provide Decedent,

CHARLES A. ASHLEY, with the knowledge of reasonably safe and sufficient safeguards,

wearing apparel, proper safety equipment and appliances needed to protect him from being

injured, disabled, killed, or otherwise harmed by working with, using, handling, coming into

13

contact with, and inhaling the asbestos dust, fibers or particles resulting from the intended, ordinary and foreseeable use of their asbestos-containing products, materials or equipment;

(4).    All Defendants failed to adequately test their asbestos-containing products, materials or equipment to determine the nature and extent of the risk from the foreseeable use, maintenance, repair or removal of their products and the need for warnings and recommended safety instructions to eliminate or reduce that risk;

(5).    All Defendants failed to advise Decedent, CHARLES A. ASHLEY,

whom Defendants knew, had reason to know, or should have known was exposed to asbestos dust, fibers or particles resulting from the intended, ordinary and foreseeable use of their asbestos-containing products, materials or equipment, to cease all future exposure to asbestos dust, fibers or particles, to be examined by a lung specialist to determine the nature and extent of any and all asbestos diseases caused by such exposure, and to receive treatment for such diseases.

40.    Such negligent and deliberate acts of all Defendants proximately resulted in Decedent, CHARLES A. ASHLEY's long-term inhalation of asbestos dust, fibers or particles from the intended, ordinary and foreseeable use of Defendants' asbestos-containing products, materials or equipment, including the routine, recommended and expected maintenance of Defendants' asbestos-containing products, materials or equipment, and this exposure directly and proximately caused Decedent, CHARLES A. ASHLEY to contract lung cancer.

41.    Defendants' foregoing acts, failures or omissions occurred over the course of many years prior to and during Decedent, CHARLES A. ASHLEY's exposure, during which

14

time, Defendants knew, had reason to know, or should have known of the deadly hazards of asbestos from their products. Defendants' negligent acts and omissions over this lengthy period of time were willful or wanton in nature, were undertaken with actual or constructive knowledge that injury would result, or were accomplished with such recklessness as to evince a conscious disregard for the health, safety, and rights of Plaintiffs.

## COUNT II – STRICT LIABILTY

42.     Plaintiffs hereby incorporate by reference Paragraphs one (1) through forty-one (41), inclusive, as if the same were hereto set forth at length.


43.     Defendants knew, had reason to know or in the exercise of reasonable care should have known, that their asbestos-containing products, materials or equipment would be sold to the public including Plaintiff or Plaintiff's employer, would be used by or around Decedent, CHARLES A. ASHLEY and other persons similarly employed, and would be relied on by such persons to be fit for the use and to accomplish the purpose for which they were sold, supplied, distributed, or otherwise placed in the stream of commerce. Defendants, because of their positions as sellers, suppliers, or distributors, are strictly liable to Plaintiffs for the following reasons:

(a).     Defendants, as manufacturers-sellers, were at all relevant times engaged in the business  of selling asbestos-containing products, materials or equipment;

(b).     At the time of the sale of their asbestos-containing products, materials or equipment to Plaintiff or Plaintiff's employer, Defendants knew, had reason to know, or should have known, that their asbestos-containing products, materials or equipment would be used by or

around Decedent, CHARLES A. ASHLEY and other persons similarly employed, as the ultimate user or consumer or otherwise affected person;

(c).     Defendants' asbestos-containing products, materials or equipment were sold in a defective condition, unreasonably dangerous to Decedent, CHARLES A. ASHLEY and others similarly employed, as users or consumers, and, throughout many years of Decedent's exposure to and use of Defendants' asbestos-containing products, materials or equipment, the asbestos-containing products, materials or equipment were expected to and did reach the user or consumer without substantial change in the condition in which they were sold;

(d).     Defendants' asbestos-containing products, materials or equipment were defective in that they were incapable of being made safe for their intended, ordinary and

foreseeable use, and Defendants failed to give adequate or sufficient warnings or instructions about the risks and dangers inherent in the products; or the intended, ordinary and foreseeable use of the Defendants' asbestos-containing products, materials or equipment is an intrinsically dangerous or ultra-hazardous activity.

44.     Defendants' breaches of duty under both state tort law and traditional maritime strict liability standards, as restated and summarized in §402(A) of  the Restatement (Second) of Torts, as described herein proximately caused or substantially contributed to cause Decedent, CHARLES A. ASHLEY to contract lung cancer, which was permanent and fatal.

45.     Defendants' breaches of duty under both state tort law and traditional maritime strict liability standards, as restated and summarized in §402(A) of the Restatement (Second) of Torts, as described herein occurred over the course of many years prior to and during Decedent, CHARLES A. ASHLEY's exposure, during which time, Defendants knew, had reason to know,

16

or should have known of the deadly hazards of asbestos from their products. Defendants' acts and omissions over this lengthy period of time were willful or wanton in nature, were undertaken with actual or constructive knowledge that injury would result, or were accomplished with such recklessness as to evince a conscious disregard for the health, safety, and rights of the Plaintiff.

## COUNT III: SPOUSAL LOSS OF SOCIETY AND CONSORTIUM

46.　　Plaintiffs hereby incorporate by reference Paragraphs one (1) through forty-five (45), inclusive, as if the same were hereto set forth at length.

47.　　CHARLES A. ASHLEY and SHIRLEY ASHELY were married on August 24, 1971 and have lived together as a married couple for more than 45 years. Throughout that time,

 CHARLES A. ASHLEY has been available to comfort, protect, care for, aid, attend to, and support Shirley Ashley physically, mentally, and emotionally.

48.　　As set forth above, Decedent, CHARLES A. ASHLEY suffered from lung cancer, a debilitating and terminal condition for 9 months prior to his death. His disease and its impact upon his bodily systems, along with the necessary and proper treatments for that disease, caused him extreme fatigue, pain, constipation, loss of appetite, repeated hospital treatments and surgery. As his disease progressed, he was largely confined to his home with the exception medical treatments, and he was unable to participate in any of the normal recreational, social, or marital activities of life which are normal to a good marriage.

49.　　As a proximate result of the Defendants' acts described above SHIRLEY ASHLEY has been deprived of the physical, mental, and emotional services, comfort, society, attentions, pleasure, solace, fellowship, marital life, companionship, and consortium of her

husband as well as out of pocket medical expenses. The aforementioned losses are continuing in nature and SHIRLEY ASHLEY will suffer such losses in the future.

## COUNT IV – WRONGFUL DEATH

50.     The factual and jurisdictional allegations of paragraphs one through forty-nine (49) are realleged and incorporated herein as if repeated verbatim.

51.     As set forth above in the paragraphs one through forty-nine (49), Defendants' wrongful acts and omissions were the direct and proximate cause of CHARLES A. ASHLEY's death. Accordingly, Plaintiff SHIRLEY ASHLEY is entitled to bring this wrongful death action and recover the full value of the life of CHARLES A. ASHLEY.

## COUNT V – PUNITIVE AND COMPENSATORY DAMAGES

52.     Plaintiffs hereby incorporate by reference Paragraphs one (1) through fifty-one (51) inclusive, as if the same were hereto set forth at length.

53.     As a direct and proximate result of the Defendants' negligence, carelessness, gross negligence, recklessness, willful or wanton misconduct, fraud, and that entire lack of care that showed a conscious indifference to the consequences, Plaintiff is entitled to punitive damages in an amount not less than Two Hundred Fifty Thousand Dollars ($250,000).

55.      As a direct and proximate result of the Defendants' strict liability, fraudulent concealment, misrepresentations and willful omissions, Decedent CHARLES A. ASHLEY was caused to contract diseases and injuries to his body systems, lungs and heart, including lung cancer, which caused Decedent CHARLES A. ASHLEY to suffer damages for which Plaintiffs are entitled to recover including, but not limited to, impairment, pain, suffering, mental anguish

and death.  In addition, Plaintiffs:

        (a).    have spent various sums of money to treat his diseases and injuries;

        (b).    have sustained a loss of earnings and earning capacity;

        (c).    have had his enjoyment of life impaired;

        (d).    have had his life expectancy shortened; and

        (e).    have suffered great physical pain and suffering and psychological and mental trauma;

        (f).    have suffered a loss of society and consortium; and

        (g).    have suffered the loss of the full value of the life of Decedent CHARLES

A. ASHLEY.

**WHEREFORE**, Plaintiffs pray for judgment in their favor, and for actual and compensatory damages in excess of Two Hundred and Fifty Thousand Dollars ($250,000), punitive damages in an amount to be determined by the trier of fact but not less than Two Hundred and Fifty Thousand Dollars ($250,000), the costs of this action, and such other and further relief as the Court may deem just and proper.

## <u>JURY DEMAND</u>

    Plaintiffs demand a trial by jury.

                    Respectfully submitted,

              By:    John E. Suthers, Esq.
                    Georgia Bar No. 693210
                    SUTHERS LAW FIRM
                    P.O. Box 8847
                    Savannah, Georgia 31412-8847
                    (912) 232-6767

jes@sutherslaw.com


and

John E. Guerry, III, Esq.
South Carolina Bar No. 7268
MOTLEY RICE LLC
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
(843)216-9000
rguerry@motleyrice.com
Pending Pro Hac Vice Admission


ATTORNEYS FOR PLAINTIFFS